UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WILLIAM SCOTT,                              |
                                            |            <u>NOT FOR PUBLICATION</u>
                        Petitioner,         |
                                            |            <u>MEMORANDUM & ORDER</u>
            - against -                     |            05-CV-0142 (CBA)
                                            |
WILLIAM PHILLIPS, Superintendent,           |
        Greenhaven Correctional Facility    |
                                            |
                        Respondent.         |
-------------------------------------------------------X

AMON, UNITED STATES DISTRICT JUDGE.

Before this Court is William Scott's request for a stay of proceedings and a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Scott's

request for a stay is denied and his petition for a writ of habeas corpus is denied.

**I.      Background**

    **A.      Facts elicited at trial**

Scott was indicted on two counts of Rape in the First Degree, N.Y. Penal Law §

130.35[1], Sexual Abuse in the First Degree, N.Y. Penal Law § 130.65[1], Burglary in the First

Degree, N.Y. Penal Law § 140.30[2], and Burglary in the Second Degree, N.Y. Penal Law §

140.25[2]. After a jury trial, Scott was convicted of first-degree rape and first-degree burglary

and was sentenced to consecutive determinate terms of imprisonment of twenty-five years on the

rape count and ten years on the burglary count. Scott is currently incarcerated pursuant to this

conviction.

The facts elicited at trial established that, about 7:30 p.m. on July 3, 1999, Scott came to

the home of Lillian Whitney, where he visited her son Robert Whitney, with whom he had been

1

friends for over ten years.  Robert Whitney's aunt, Ruth Mae Keene, also lived in Lillian

Whitney's home.  Scott told Robert Whitney that he was looking for a woman to have sex with

him that night and asked Robert Whitney if he knew anyone who would.  Scott and Robert

Whitney went to the liquor store, bought a pint of rum, and went back to Lillian Whitney's

house, where they drank the rum.  They discussed where Scott might be able to meet women,

and Robert Whitney suggested a bar about three miles from his home.  Around 11:00 p.m., they

took a cab to that bar.  Scott spoke to women at the bar, but none were responsive to his

overtures.

Scott and Robert Whitney each drank about six drinks at the bar, but Robert Whitney

testified that neither of them were drunk, and in particular that Scott was not staggering, nor was

his speech slurred.  After the bar closed, Scott and Robert Whitney walked to a store and bought

a pack of cigarettes.  Between about 3:30 and 4:30 a.m., Scott said that he was going to his

father-in-law's house, a few blocks from Lillian Whitney's home, and boarded a bus going in

that direction.  Robert Whitney went home to his wife.  At 5:45 a.m. on July 4, 1999, Lillian

Whitney locked all the doors of the house and left for work.  Keene was in her room on the

second floor.  At about 9:00 a.m., Keene awoke to find petitioner lying on top of her in her bed.

He held her neck with one hand and covered her mouth with the other, and threatened to kill her

if she moved.  Keene closed her eyes and Scott raped her.  When Keene opened her eyes, it was

just before 10:00 a.m., and petitioner was gone.  At about 4:00 p.m., Lillian Whitney returned,

and Keene told her she had been raped.

Keene was interviewed by Police Officer Brian Meadows and Detective Linda Hardy at

the house.  Keene was treated at Jamaica Hospital, where nurse Sara Ludwig examined her.

Ludwig testified that Keene's vagina had injuries consistent with penetration by a penis and a urinary tract infection consistent with having had sexual intercourse. A Vitullo kit was prepared.

In addition, Lillian Whitney testified that Keene had marks in the front of her neck, "like a holding, a hand print." Keene testified that she felt pain in her throat for about a week and pain in her vagina for several days, and that it hurt when she used the bathroom.

On July 5, 1999, Detective Hardy spoke to Scott at the precinct, where he admitted that he had been at Lillian Whitney's house on the evening of July 3rd, and that he and Robert Whitney had gone to a bar and drank. Scott gave samples of his saliva and blood. According to the trial testimony of Karen Dooling, Assistant Director at the Office of the Chief Medial Examiner in the forensic biology laboratory, those samples matched the samples from the Vitullo kit prepared from Keene, leading her to conclude that the substance on the swabs taken from Keene's vagina was Scott's semen.

**B.      State court proceedings**

After his arrest on October 5, 2000, Scott was indicted on two counts of Rape in the First Degree, N.Y. Penal Law § 130.35[1], Sexual Abuse in the First Degree, N.Y. Penal Law § 130.65[1], Burglary in the First Degree, N.Y. Penal Law § 140.30[2], and Burglary in the Second Degree, N.Y. Penal Law § 140.25[2]. After a jury trial, Scott was convicted of first-degree rape and first-degree burglary and was sentenced to consecutive determinate terms of imprisonment of twenty-five years on the rape count and ten years on the burglary count. Scott is currently incarcerated pursuant to this conviction.

Following his conviction, in December 2001, Scott filed a motion in the trial court pursuant to section 440.10 of New York Criminal Procedure Law, claiming that his counsel

rendered ineffective assistance because he did not engage in pre-trial motion practice, failed to meet with him a sufficient number of times, threatened him, and did not engage in a "full fledge[d] investigation." That motion was denied by the trial court on February 13, 2002. The court held that Scott's motion was procedurally barred because the judgment was pending appeal and his claims could be advanced on direct appeal. The court also held that the motion was procedurally barred because Scott failed to provide the required sworn allegations of fact and instead only provided conclusory allegations without factual support. The court also noted that if it were to address the merits of Scott's motion, the motion would be likewise denied. People v. Scott, No. 3504-00 (N.Y. Sup. Ct. Feb. 13, 2002).

Scott did not seek further review of the trial court's denial of his section 440.10 motion. However, in March 2003, Scott filed an appeal in the New York State Supreme Court, Appellate Division, Second Department. In his brief, he claimed that he received ineffective assistance of counsel due to counsel's ignorance of the law on the intoxication defense as it related to the rape count and failure to attack first-degree burglary for lack of proof.

On November 3, 2003, the Appellate Division affirmed Scott's conviction, holding that Scott was afforded effective assistance of counsel. People v. Scott, 1 A.D.3d 388 (N.Y. Sup Ct. App. Div. 2003). Scott sought leave to appeal to the New York State Court of Appeals, which was denied on February 16, 2004. People v. Scott, 1 N.Y.3d 634 (N.Y. 2004). Scott subsequently filed his federal habeas petition in this Court.

### C.    The instant habeas petition

In his petition, Scott asserts that he received ineffective assistance of counsel, claiming that his attorney did not put forth a viable defense, and in particular, that his attorney failed to

attack the burglary charge for lack of proof and failed to argue intoxication as a defense to the rape charge. Scott also asserts that his attorney was ineffective for failure to hire a DNA expert, for failure to hire an investigator, and because of his bias, as demonstrated by his attorney stating "you're guilty" on the record, outside the jury's presence.

On November 18, 2005, the District Attorney for Queens County filed an Affidavit and Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus. The District Attorney responded to Scott's argument regarding the lack of a viable defense on the merits. However, the District Attorney asserted that Scott's other claims were technically exhausted, but procedurally barred. In response, on December 5, 2005, Scott requested that the Court stay his habeas petition, presumably to attempt to remedy in state court the District Attorney's contentions as to exhaustion.

In a subsequent letter to this Court, dated January 12, 2006, Scott once more move for a stay of his petition, indicating that he had not exhausted his state court remedies. On April 21, 2006, Scott filed a third request for a stay of his petition, while simultaneously filing an Affidavit and Memorandum of Law in reply to the People's Affidavit and Memorandum of Law, in which he responded to the District Attorney's arguments addressing his lack of viable defense claims on the merits. In an Order dated September 29, 2006, this Court denied Scott's third request for a stay of his petition. In addition, the Court found that Scott's arguments of ineffective assistance of counsel, predicated on his attorney's bias, his attorney's failure to hire a DNA expert, and his attorney's failure to hire an investigator were technically exhausted but procedurally barred.

In response, on October 20, 2006, Scott filed a fourth request to stay his petition so that

he may file a petition for a writ of error *coram nobis* with the state court, in which he will allege ineffective assistance of appellate counsel.

## II.    Scott's Fourth Request for a Stay is Denied

In his fourth request for a stay, Scott states that he wishes to file a petition for a writ of error *coram nobis* in state court in which he will make three arguments: (1) that he had a right to be "advised on the acceptability and desirability of accepting a plea"; (2) that his appellate counsel was ineffective for failing to argue ineffectiveness of trial counsel, predicated on his trial counsel's failure to conduct an investigation and to call an expert witness at trial; and (3) that his appellate counsel was ineffective for failing to raise "the above issues" on direct appeal, presumably referring to his arguments regarding "the acceptability and desirability of accepting a plea." Although he has not expressly requested to amend his habeas petition to include these claims, the Court presumes that Scott wishes to do so.

A petitioner may only amend his habeas petition to include additional claims if those claims are timely under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a one-year statute of limitations on state prisoners seeking habeas corpus review in federal court. See 28 U.S.C. § 2244(d)(1)(A-D). The one year period in which to file a habeas petition begins to run from the date on which the petitioner's judgment of conviction becomes final. Scott's conviction became final on May 17, 2004, ninety days after conclusion of direct review in state court, when the time for seeking certiorari before the Supreme Court expired. Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). Scott's one-year statute of limitations, therefore, expired on May 17, 2005. Because the arguments in Scott's fourth request to stay his petition were raised for the first time on October 20, 2006, they are

only timely to the extent that they relate back to the filing date of the original petition, that is, if the claims raised in the amendment arise out of the same "conduct, transaction, or occurrence" as the claims raised in the timely filed petition. Fed. R. Civ. P. 15(c)(2). Thus, the Court will only grant Scott's request to amend his petition to the extent that his new arguments relate back to his initial habeas petition.

Scott also requests that this Court grant him a stay so that he may raise these new arguments in a petition for a writ of error *coram nobis* in state court. All claims presented in a petition for a writ of habeas corpus must first be exhausted in state court proceedings. See 28 U.S.C. § 2254(b)(1)(A) (stating that a federal court may not consider a habeas corpus petition unless the petitioner has exhausted all state judicial remedies). See Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). The exhaustion doctrine requires that a habeas petitioner challenging a state conviction on federal grounds "must first have given the state courts a fair opportunity to pass upon his federal claim." Id. (citing Picard v. Connor, 404 U.S. 270, 275 (1971). A habeas petitioner must inform the state court of both the factual and legal basis for the federal claim, id. at 191, alert the state court to the federal constitutional nature of the claim, and specify the same claim that is being asserted in federal court, Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991); Daye, 696 F.2d at 190-91. In addition, a petitioner must also have used "all available mechanisms to secure review" of the federal claim in state court. Dean v. Smith, 753 F.2d 239 (2d Cir. 1985). Thus, the constitutional claim must have been presented to the highest state court able to hear it. Daye, 696 F.2d at 190 n.3; see O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Grey v. Hoke, 933 F.2d at 117.

A court faced with a "mixed petition" containing both exhausted and unexhausted state

claims may, in limited circumstances, stay the proceedings on exhausted claims while the petitioner returns to state court to exhaust an unexhausted claim. Rhines v. Weber, 544 U.S. 269, 276–78 (2005) (citing 28 U.S.C. § 2254(b)(2)). However, in light of the AEDPA, the Supreme Court has limited the situations in which a stay and abeyance of a habeas petition is appropriate: "[S]tay and abeyance should be available only in limited circumstances . . . when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277. Furthermore, "[e]ven if good cause existed, the district court would abuse its discretion if it granted a stay when the unexhausted claims are plainly meritless." Id. at 270. Thus, the Court will only allow Scott's request for a stay on his new arguments to the extent that he can demonstrate good cause for failing to exhaust these claims and that the claims are not plainly meritless.

> ### A.    Scott's claims regarding "the acceptability and desirability of accepting a plea" are untimely

Scott seeks, via his fourth request for a stay, to amend his habeas petition to include a claim that he had a right to be advised of "the acceptability and desirability of accepting a plea" and that his appellate counsel was ineffective for failing to raise that argument. However, both of these arguments are untimely, such that Scott may not amend his habeas petition to include these claims.

As noted above, Scott's one-year statute of limitations under the AEDPA expired on May 17, 2005. Although Scott's initial habeas petition was timely filed, he did not raise the issue of "the acceptability and desirability of accepting a plea" until October 20, 2006, more than a year after the expiration of the one-year statute of limitations. Accordingly, any claims regarding "the acceptability and desirability of accepting a plea" are untimely unless they relate back to the

filing date of the original petition.  That is, Scott must demonstrate that the claims raised in the amendment arise out of the same "conduct, transaction, or occurrence" as the claims raised in the timely filed petition.  Fed. R. Civ. P. 15(c)(2).

In the instant case, Scott's arguments regarding "the desirability and acceptability of accepting a plea" do not relate back to his initial, timely-filed habeas petition.  Noting that "federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto," the Supreme Court has rejected "a comprehensive definition of 'conduct, transaction, or occurrence, [under which] virtually any new claim introduced in an amended habeas petition will relate back." Mayle v. Felix, 545 U.S. 644, 656–57(2005).  Instead, the Court has endorsed a definition of "conduct, transaction, or occurrence" that would allow "relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." Id.  Thus, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year statute of limitations) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650.

In his fourth request for a stay of his habeas petition, Scott appears to claim that he was not properly advised by his trial counsel as to "the acceptability and desirability of accepting a plea" and that his appellate counsel was ineffective for failing to raise this issue on direct appeal.  However, Scott did not make any reference to a guilty plea in his initial habeas petition, but instead argued that his trial counsel was biased, failed to put forth a proper defense, failed to hire an investigator, and failed to hire a DNA expert.  None of these arguments can be said to arise

out of the same "conduct, transaction, or occurrence" as Scott's claims regarding a guilty plea.

Thus, Scott's claims regarding "the acceptability and desirability of accepting a plea" are not

timely. Accordingly, the Court denies Scott's request to amend his habeas petition to include

these claims. It is therefore unnecessary to grant Scott a stay of the instant habeas petition to

allow him to exhaust this claim in state court.

> **B.** **Scott's has not shown good cause for failing to exhaust his claim of ineffective assistance of appellate counsel, predicated upon ineffective assistance of trial counsel, and such claim is plainly meritless**

Scott also seeks to amend his petition to include an argument that his appellate counsel

was ineffective for failing to argue that his trial counsel was ineffective, and requests that this

Court stay his petition so that he may raise this argument in a petition for a writ of error *coram*

*nobis* in state court. As an initial matter, it appears as though this request to amend his petition

was timely filed. Although Scott raised this ineffective assistance of appellate counsel argument

for the first time on October 20, 2006, after the expiration of the one-year statute of limitations,

the argument relates back to a claim raised in his initial habeas petition. In particular, Scott

argues that his appellate counsel was ineffective because he did not argue that his trial counsel

was ineffective for failing to conduct an investigation and failing to call an expert witness at

trial. Although Scott did not raise any ineffective assistance of appellate counsel arguments in

his initial, timely-filed habeas petition, he did argue that his trial counsel was ineffective for

these very same reasons. Thus, the amended petition states claims that "are tied to a common

core of operative facts" as the original petition, and "relation back [is] in order." Mayle, 545

U.S. at 647.

However, Scott has not exhausted his claim that he was denied effective assistance of

appellate counsel, as he has not filed a petition for a writ or error *coram nobis* arguing ineffective assistance of appellate counsel in state court. As such, this unexhausted claim cannot form the basis of his habeas petition. Accordingly, Scott seeks a stay of his habeas petition to allow him to return to state court to file the petition for a writ of error *coram nobis*. This request is denied, as Scott has not demonstrated good cause for his failure to exhaust his claim in state court.

Under Rhines, a court may only grant a stay when "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." 544 U.S. at 277. In a prior order denying his requests to stay his petition, the Court informed Scott that in order to receive such a stay, he must show good cause for failure to exhaust his state court claims. See Memorandum & Order, Scott v. Phillips, No. 05-CV-142(CBA) (E.D.N.Y. Sept. 29, 2007). Nonetheless, Scott has failed to provide the Court with the reason for his failure to file a petition for a writ of error *coram nobis*. Although Scott indicates in the instant request for a stay that he cannot be faulted for his appellate counsel's ineffective assistance, the actions of his appellate counsel can only excuse Scott's failure to raise the ineffective assistance of trial counsel argument on appeal. That is, the actions of Scott's appellate counsel do not explain Scott's failure to file a petition for a writ of error *coram nobis* asserting ineffective assistance of appellate counsel.

Furthermore, Scott was aware as early as January 6, 2005, when he filed his initial habeas petition, of the underlying facts of this claim, namely his trial counsel's alleged ineffective assistance for failing to conduct an investigation and failing to call an expert witness at trial. In addition, Scott, should have been aware that his appellate counsel did not raise these arguments on appeal. Scott clearly knew what arguments his counsel raised on appeal, as he referenced

those arguments in his initial habeas petition. Accordingly, Scott should have been aware, as early as January 6, 2005, of his appellate counsel's allegedly ineffective assistance and should have filed a petition for a writ of error *coram nobis* at that time. "Were the Court to grant a stay simply on the basis that petitioner did not bring the claim earlier, despite admittedly being previously aware of the facts supporting the claim, it would be defeating AEDPA's twin purposes of encouraging finality and increasing the incentives for petitioners to exhaust all claims prior to filing habeas petitions in federal court." Hanesworth v. Greene, No. 04-CV-0145S, 2007 WL 1201585 (W.D.N.Y. Apr. 22, 2007) (internal quotations omitted).

Furthermore, even if Scott had demonstrated good cause for his failure to exhaust his ineffective assistance of appellate counsel claim, his claim is plainly meritless, such that it would be an abuse of discretion to permit Scott to return to state court to exhaust that claim. In order to demonstrate ineffective assistance of counsel, petitioner must satisfy the two pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 698. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and, as a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable" because judicial scrutiny of counsel's performance is deferential. Id. at 689-90. However, strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations

on investigation." Id. at 691. The United States Supreme Court has explained the "reasonable probability" of the prejudice prong to mean "a probability sufficient to undermine confidence in the outcome." Id. at 694.

In preparing a brief, appellate counsel is not required to raise every claim arising out of a trial and has the discretion to eliminate weaker ones. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). In order to establish ineffective assistance of appellate counsel, Scott must show that his appellate counsel did something more than omit a nonfrivolous argument that Scott wished to pursue. See Jones, 463 U.S. at 753-54; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). Scott must establish that counsel opted not to raise "significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

In the instant case, Scott's appellate counsel chose to pursue on direct appeal Scott's claims that his trial counsel was ineffective for failing to attack the burglary charge for lack of proof and for failing to assert intoxication as a defense to the rape charge. These arguments were not clearly and significantly weaker than the argument that Scott's trial counsel was ineffective for failing to hire an investigator and for failing to call a DNA expert witness at trial. Although Scott raised the latter arguments in his habeas petition, he has not explained how these purported failures reflected deficient performance by his trial counsel, or how these failure might have had any effect on the outcome of the case.

With respect to the failure to hire an investigator, Scott does not explain what information he hoped that an investigator would have uncovered. Scott's trial counsel explained to the trial judge that he had investigated potential witnesses to which Scott had pointed him, that

none of those witnesses had anything to add to Scott's case, as they "don't establish an alibi or any other defense that would be persuasive." In addition, although Scott insists that his attorney should have hired a DNA expert, Scott does not allege any basis for believing that the DNA evidence was subject to challenge. Indeed, Scott's counsel asserted that he had reviewed "every page of that DNA evidence," and found no basis for questioning its validity. His counsel noted that although Scott could "pretend there is no such thing as DNA . . . no jury and no court in this country will allow that to be done." Thus, Scott has not shown that his counsel's decision not to present a DNA expert was other than a strategic decision, nor has he shown that his counsel ignored significant and obvious issues, while pursuing issues that were clearly and significantly weaker.

Accordingly, because Scott has not shown good cause for his failure to exhaust his ineffective assistance of appellate counsel claim, and because that claim is clearly without merit, it would be an abuse of discretion to stay the instant habeas petition to allow Scott to exhaust that claim. Scott's requests to amend his habeas petition, and to stay his habeas petition so as to exhaust the newly amended claim, are denied.

III.     **Scott's Remaining Claim Fails on the Merits**

As noted in this Court's previous order, the only claim in Scott's initial habeas petition that is properly before this Court is Scott's argument that he was denied effective assistance of counsel because his attorney failed to put forth a proper defense. This claim was exhausted. The Appellate Division held that Scott was afforded the effective assistance of counsel, People v. Scott, 1 A.D.3d 388 (N.Y. App. Div. 2003), and the Court of Appeals denied leave to appeal,

People v. Scott, 1 N.Y.3d 634 (N.Y. 2004).[1]

The AEDPA establishes a deferential standard that federal courts must apply when

reviewing state court decisions in habeas cases.  The statute provides, in relevant part:

> (d) An application for a writ of habeas corpus of behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>> (1) resulted in a decision that was contrary to, or involved the unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the
>> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).  "Clearly established Federal law" is comprised of "the holdings, as opposed

to the dicta, of [the Supreme] Court's decision as of the time of the relevant state-court

decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 259

U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law "if the state

---

[1] The Appellate Division, in determining that Scott "was not deprived of his right to the
effective assistance of counsel at the trial" and affirming his conviction, relied on People v.
Benevento, 91 N.Y.2d 708 (N.Y. 1998).  Benevento in turn relied upon the standard established
by the New York Court of Appeals in People v. Baldi, 54 N.Y.2d 137 (N.Y. 1981), wherein an
ineffective assistance of counsel claim will be denied "so long as the evidence, the law, and the
circumstances of a particular case, viewed in totality and as of the time of the representation,
reveal that the attorney provided meaningful representation."  The Second Circuit, in dicta, has
questioned whether the New York ineffective assistance of counsel standard is "contrary to"
federal law as set forth in Strickland. See Henry v. Poole, 409 F.3d 48, 54-55, 70 (2d Cir. 2005)
("[T]he touchstone of the New York test is the fairness of the process as a whole. . . while the
federal test considers the outcome of the proceeding for the defendant.") (internal citations
omitted).  However, the Henry court concluded that it was bound by previous Second Circuit
case law holding that the New York standard was not contrary to the Strickland standard. Id. at
55. See also Anekwe v. Phillips, No. 05-CV-2183, 2007 WL 1592973 (E.D.N.Y. May 31, 2007);
Acencio v. McKinney, No. 05-CV-1026, 2007 WL 2116253 (E.D.N.Y. July 20, 2007).  This
Court is bound by that case law as well.  Nevertheless, the Court notes that the petitioner's claim
would fail even if reviewed under a *de novo* standard.

court applies a rule that contradicts" Supreme Court precedent or, when faced with a set of materially indistinguishable facts from a Supreme Court decision, "arrives at a result different from that precedent." Williams, 259 U.S. at 406. In assessing whether a decision is an "unreasonable application" of clearly established federal law, a federal court "should ask whether the state court's application was objectively unreasonable." Id. at 409. The Second Circuit has noted that an objectively unreasonable application of federal law is different from an incorrect application: [s]ome increment of incorrectness beyond error is required," although "the increment need not be great." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (internal citations omitted). This deferential review of state court judgments is available only when a federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d at 93.

As discussed, in order to prevail on an ineffective assistance of counsel claim, a petitioner show (1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Rompilla v. Beard, 545 U.S. 374 (2005); Wiggins v. Smith, 539 U.S. 510 (2003). A court need not decide both prongs of the Strickland test if a party has made an insufficient showing on one. Id. at 697. When a federal court reviews a state court decision denying an ineffective assistance of counsel claim on the merits, a petitioner must show that the state court's decision was contrary to Strickland, or that the state court applied Strickland in an objectively unreasonable manner. See Eve v. Senkowski, 321 F.3d 110, 123 (2d Cir. 2003) (citing Bell v. Cone, 535 U.S. 685 (2002)).

As Scott's ineffective assistance of counsel claim was adjudicated on the merits by the Appellate Division, People v. Scott, 1 A.D.3d 388 (N.Y. App. Div. 2003), *de novo* review by this Court is appropriate. The trial record reveals that counsel's performance regarding the petitioner's defense was not "outside the wide range of professionally competent assistance." See Strickland, 466 U.S. at 690. Trial counsel presented a coherent opening statement, repeatedly and successfully objected to various comments in the prosecutor's opening, conducted skillful cross examinations, and put forth a logical summation which challenged the accuracy and credibility of the State's witnesses. Furthermore, Scott's counsel performed effectively, despite Scott's disruptive behavior throughout the trial, including using profanities repeatedly, complaining about his counsel, and punching his counsel in the head and knocking him to the courtroom floor in front of the jury. (Tr. at 237-39, 242-44, 368.) Indeed, the trial court repeatedly commended counsel for his able representation of Scott. (Tr. at 413.)

Scott makes two specific allegations that trial counsel was ineffective. First, Scott argues that his counsel was ineffective for failing to argue in summation that Scott's intoxication was a defense to the rape charge. However, there was relatively little evidence supporting an intoxication defense. See generally People v. Rodriguez, 76 N.Y.2d 918 (1990) (although there was evidence that defendant used narcotics on day of crime, it was not error to not charge intoxication because there was no evidence that defendant's intent was diminished); People v. Perry, 61 N.Y.2d 849 (1984) (explaining minimum evidence required to sustain intoxication charge); People v. Kellar, 175 A.D.2d 312 (N.Y. App. Div. 1991); People v. Kessler, 176 A.D.2d 1202 (N.Y. App. Div. 1991). The evidence established, at most, Scott consumed one-half of a pint of rum and six mixed drinks over eight hours, and that he stopped drinking at least four and

one-half hours before raping Ms. Keene.  The only witness who testified that Scott had been drinking indicated that he was not intoxicated.  That witness testified that at about 8:00 p.m., the night before the rape occurred, he and Scott split a pint of rum and that afterwards, Scott drank approximately six mixed drinks at a nearby bar.  However, that witness testified that when Scott left at 3:30 a.m., he was not staggering and his speech was not slurred.  (Tr. at 291, 294, 308-09 (Whitney).)  Furthermore, the victim testified that she "could not tell" if the man who raped her had been drinking.  (Tr. at 273 (Keene).)  The defendant himself offered no testimony that he was intoxicated.  Scott chose, as was his right, not to testify regarding his own intoxication, despite being given several opportunities to do.  (Tr. 391-420.)

In addition, arguing an intoxication defense to the rape charge may have required an admission by the defendant that he had sex with the victim by forcible compulsion, but that he was too intoxicated to form the requisite criminal intent.  Such an argument may have undermined the primary defense, that the State had not established its case and that the victim's version of events was not credible.  Accordingly, Scott has failed show that his counsel's decision not to argue an intoxication defense to the rape charge was unreasonable.

The Court, however, is troubled by suggestions in the record that Scott's trial counsel may have chosen not to pursue an intoxication defense to the rape charge, because he mistakenly believed that intent was not an element of the crime of rape.  (Tr. 401-02, 413-14.)  Although it is not clear that Scott's counsel would have made the strategic choice to pursue an intoxication defense if he had been aware of his error, nevertheless, the Court recognizes that counsel's failure to properly identify the elements of rape was problematic and arguably meets the first prong of the Strickland test.

Even if Scott's claim had satisfied the first part of <u>Strickland</u>, however, the Court does not believe there is a "reasonable probability" that the results of the trial would have been at all different but for counsel's error. As detailed above, there was little if any evidence that Scott's capacity was diminished from his consumption of alcohol. Given the absence of evidence suggesting that Scott was intoxicated at the time of the rape, and that a significant period of time lapsed between petitioner's drinking and the alleged rape and burglary, it is doubtful that a reasonable juror could have concluded that Scott was so intoxicated he could not form the intent to rape. Indeed, the trial court observed in front of counsel that there was "very little evidence" of intoxication and that this defense was "questionable." (Tr. at 411.) Since the jury ultimately rejected the intoxication defense with respect to the burglary count, there is no reason at all to believe that they would have found intoxication to have been a defense to the rape charge had counsel pressed that argument.

The trial court, moreover, properly instructed the jury on the elements of first-degree rape. The court stated that rape in the first degree requires forcible compulsion, and that in turn requires that the defendant "intentionally" compel a person to engage in sexual intercourse (Tr. at 445.) The court's instructions also noted that intoxication may be considered by the jury in determining whether a defendant had the requisite intent to commit the crimes with which he was charged. (Tr. at 443.) For all the foregoing reasons, the Court finds that counsel's failure to advance an intoxication defense did not result in prejudice to Scott's proceedings by the standards set forth in <u>Strickland</u>.

Scott also argues that his trial counsel was ineffective for failing to argue that there was insufficient evidence to establish the physical injury element of first degree burglary. <u>See</u> N.Y.

19

Penal Law § 140.30[2] ("A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he . . . [c]auses physical injury to any person who is not a participant in the crime." However, it is clear from the trial record that there was abundant evidence to support the physical injury element of first degree burglary. In particular, the victim testified that she had been raped, identified Scott as the man who had raped her, and testified that she had pain in her throat and vagina for days afterwards. The nurse who examined her testified that the victim had injuries consistent with penetration by a penis, and her sister testified that Keene had marks in the front of her neck. Because of the abundant evidence supporting the physical injury element of the first degree burglary charge, Scott's counsel chose to focus on the intoxication defense to the burglary charge, as well as arguing that the State had not established what exactly happened the morning in question. Accordingly, Scott has failed to show that his trial counsel's decision not to rely on a frivolous defense was anything other than a strategic decision, or that it fell below an objective standard of reasonableness. Furthermore, given the abundance of evidence supporting the physical injury element of the burglary charge, Scott has not shown that his counsel's allegedly defective performance prejudiced him in any way. Because petitioner has failed to show that his counsel's performance was constitutionally deficient in this regard, the Court finds that the state court's denial of Scott's ineffective assistance of counsel claim was not contrary to federal law.

## CONCLUSION

For the reasons set forth above, the Court denies Scott's motion to stay his habeas petition so that he may exhaust his state court remedies. In addition, the Court denies Scott's

petition on the merits.  A certificate of appealability will not be issued because Scott has not

made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Clerk of the Court is instructed enter judgment in accordance with this Order and to close

the case.

     SO ORDERED.

Dated: Brooklyn, New York
      September 19, 2007


                             Carol Bagley Amon
                             United States District Judge